2019R000194/BL

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Susan D. Wigenton |
| | : | |
| v. | : | Crim. No. 24- 731 |
| | : | |
| | : | 18 U.S.C. § 1832(a)(3) |
| ANDREW BLUM | : | 18 U.S.C. § 1832(a)(5) |

## I N F O R M A T I O N

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

### General Allegations

1. At all times relevant to this Information:

a. "Company-1" was a subsidiary of a New Jersey-based corporation that maintained its principal place of business in Northern New Jersey. Company-1's parent corporation was one of the world's largest producers of oils, juices, peel and byproducts, as well as a leading manufacturer of proprietary flavors sold to, among others, the world's largest beverage companies. Company-1's entire business was predicated on the development of formulas used in the production of flavors and as such, the intellectual property represented in formulas is one of Company-1's most important assets.

b. Company-1 put numerous safeguards in place to protect the confidentiality of its proprietary formulas, processes, trade secrets, and other confidential materials. Company-1 protected its proprietary information through a multi-layered strategy involving both physical security as well as password protection of computer systems.

c. Each employee acknowledged and signed Company-1's employee handbook (the "Employee Handbook"), which required Company-1's employees to acknowledge that Company-1's business and trade secrets be kept confidential. The Employee Handbook specifically stated that proprietary information included all information obtained by employees during the course of their work and that confidential information was any information not generally known to the public or the industry. The Employee Handbook further stated, and by signing it each employee acknowledged, that employees agreed not to disclose or use proprietary or confidential information while employed by Company-1. The employees' obligation to safeguard Company-1's intellectual property and trade secrets survived termination of employment.

d. In addition, Company-1 limited the internal dissemination of confidential, proprietary, and trade secret materials only to those people whose job functions required them to use this information and limited access to certain of its most sensitive documents, such as its formulas, through password-protecting those files on company systems. Company-1 required its managers to ensure that formulas created and used in their departments were kept confidential and accessed under the security protocols of the company, and used or accessed only on an "as needed" basis.

e. As part of its efforts to maintain the confidentiality of its proprietary and trade secret materials, Company-1 also regularly monitored its employees' use of company-provided technology and systems. Company-1 employees were made aware that all company-issued electronic devices were subject to

monitoring by the company. Additionally, Company-1 employees were made aware in the Employee Handbook and in a non-disclosure agreement ("NDA") that there was no expectation of privacy in the transmission of any document or information contained, stored, or transmitted in such devices.

      2.      Defendant Andrew Blum ("Blum") was a New Jersey resident who was employed by Company-1 as its Vice President of Product Development from in or around 2013 to on or about December 12, 2018.

      3.      Co-Conspirator-1 was a New Jersey resident who was employed by Company-1 as a Junior Food Scientist from in or around 2015 to on or about December 12, 2018.

      4.      Blum signed the Employee Handbook in 2013 and again in 2018, agreeing not to disclose or use proprietary or confidential information while employed by Company-1, or after termination. Co-Conspirator-1 signed the Employee Handbook in 2015 and again in 2018, agreeing not to disclose or use proprietary or confidential information while employed by Company-1, or after termination.

      5.      Because Blum's and Co-Conspirator-1's jobs required access to confidential, proprietary, and trade secret materials, Blum executed an NDA in or around July 2013, and Co-Conspirator-1 executed an NDA with Company-1 in or around June 2015. The NDA required, *inter alia*, that Blum and Co-Conspirator-1 not use company trade secrets for any purpose other than their employment.

      6.      In or around December 2018, during routine, company-initiated monitoring of Company-1's technology and computer systems, Company-1's

Information Technology ("IT") team discovered that on or about July 31, 2018, Co-Conspirator-1 had been using a personal email account on a Company-1-provided computer to forward 82 files, each of which contained proprietary and trade secret information, to Blum on his personal email account. The list of 82 files included virtually all of the formulas used in the Company-1 department where Blum and Co-Conspirator-1 worked.

7. Company-1 later learned that Blum and Co-Conspirator-1, in or around the fall of 2018, accessed other sensitive formulas belonging to Company-1 that Blum and Co-Conspirator-1 were not working on and should not have accessed, including a secret formula used in one of the most recognizable names in the global soft drink industry. Other email communication between non-Company-1 accounts showed that Blum and Co-Conspirator-1 were planning to leave Company-1 to work for competitor companies. Company-1's IT team discovered records demonstrating that Blum and Co-Conspirator-1 downloaded Company-1 proprietary formulas onto unauthorized electronic media.

8. On or about December 12, 2018, as a result of the above conduct, Company-1 terminated the employment of Blum and Co-Conspirator-1.

9. In or around April 2019, a printout of documents containing Company-1's proprietary and trade secret information ("File-1") that belonged to Company-1 was lawfully recovered from Blum's residence. The contents of File-1 should not have been taken to Blum's residence and should not have been retained by Blum after his termination. One of the documents in File-1 was developed by a

department in Company-1 where Blum did not work, and contained a secret formula that accounted for a large portion of Company-1's revenue.

10. A review of one of Blum's personal cloud-based storage accounts in or around August 2019 revealed that Blum possessed proprietary and trade secret information ("File-2") that belonged to Company-1. File-2 contained a formula for an oil blend to match a customer specification. This was information that should not have been retained outside of the office and was similar to the first three pages of File-1. Additionally, a page within File-2 contained handwritten notes for a beverage product that was sold by one of the world's largest soda companies in a country in Asia.

## COUNT ONE
(Conspiracy to Possess Stolen Trade Secrets)

11. Paragraphs one through eight of this Information are realleged here.

12. Beginning from at least on or about July 26, 2018, and continuing until on or about January 31, 2019, in the District of New Jersey, and elsewhere, the defendant,

**ANDREW BLUM,**

knowingly conspired with another to possess trade secrets that were related to products and services used in and intended for use in interstate and foreign commerce, knowing the same to have been stolen, misappropriated, obtained, and converted without authorization, with intent to convert those trade secrets, to the economic benefit of anyone other than the owner of the trade secrets, and intending and knowing that the offense would injure any owner of the trade secrets, contrary to Title 18, United States Code, Section 1832(a)(3).

### Object of the Conspiracy

13. The object of the conspiracy was for Blum and Co-Conspirator-1 to enrich themselves by taking trade secrets belonging to Company-1.

### Manner and Means of the Conspiracy

14. It was a part of the conspiracy that Co-Conspirator-1 sent Company-1's trade secret documents to Blum and that Blum, thereafter, solicited third-party companies for employment while possessing trade secret information belonging to Company-1.

## Overt Acts

15. In furtherance of the conspiracy and to achieve its unlawful object, Blum and Co-Conspirator-1 committed, and caused to be committed, the following overt acts, among others, in the District of New Jersey and elsewhere:

    a. On or about July 26, 2018, Co-Conspirator-1 sent a list containing approximately 82 formulas of Company-1's proprietary and trade secret information to Co-Conspirator-1's personal email account.

    b. On or about July 31, 2018, Co-Conspirator-1 utilized the same personal email account to email the approximate 82 formulas to a personal email account belonging to Blum.

    c. On or about August 30, 2018, Blum sent an email to Company-2, one of Company-1's competitors, about leaving Company-1 to join Company-2.

    d. On or about October 19, 2018, Blum sent an email to Company-3, another one of Company-1's competitors, about leaving Company-1 to join Company-3. In an email to Company-3, Blum shared a proposed business plan with Company-3.

    e. On or about October 29, 2018, Blum sent an email to Co-Conspirator-1 with a document titled: "Revised plan for working with Company-4 [another competitor of Company-1]."

    f. On or about January 31, 2019, Blum connected a USB device to his personal laptop, from which one of Company-1's files was accessed, and thereafter did not return the USB device to Company-1.

In violation of Title 18, United States Code, Section 1832(a)(5).

## COUNT TWO
(Possession of Stolen Trade Secrets)

16. Paragraphs one through ten of this Information are realleged here.

17. Between in or around April 2019 and in or around August 2019, in the District of New Jersey, and elsewhere, the defendant,

**ANDREW BLUM,**

knowingly, with intent to convert trade secrets that were related to products and services used in and intended for use in interstate and foreign commerce, to the economic benefit of persons other than the trade secrets' owner, and intending and knowing that the offense would injure any owner of those trade secrets, possessed such information, knowing the same to have been stolen, misappropriated, obtained, and converted without authorization.

In violation of Title 18, United States Code, Section 1832(a)(3).

## FORFEITURE ALLEGATION

Upon conviction of the offenses charged in Counts One and Two of this Information, the defendant,

**ANDREW BLUM,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 2323(b):

a. Any and all articles, the making or trafficking of which is prohibited under chapter 90 of Title 18, United States Code;

b. Any and all property used, or intended to be used, in any manner or part to commit or facilitate the commission of one or both of the offenses charged in Count One and Count Two of this Information; and

c. Any and all property, real and personal, constituting or derived from proceeds the defendant obtained directly or indirectly as a result of the commission of one or both of the offenses charged in Count One and Count Two of this Information, and all property traceable to such property.

The property subject to forfeiture includes, but is not limited to, all right, title, and interest of defendant **ANDREW BLUM** in the following:

| Device | Serial Number |
|---|---|
| HP Desktop | MX12300632 |
| Inspiron Laptop | 34787896669 |
| Samsung Tablet | Unknown |
| 2 CDs marked Symrise | Unknown |
| iPhone | IMEI 359232068184171 |
| Red USB Drive | Unknown |
| 16G Black Verbatim USB Drive | Unknown |
| 16G Black Verbatim USB Drive | 180607041016670AAA |
| 16G Black Verbatim USB Drive | YB1667728001861ATL |
| 16G Black Verbatim USB Drive | YO1667728906138ATI |
| Symrise red and silver USB drive | Unknown |

## **SUBSTITUTE ASSETS PROVISION**

If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 2323(b)(2), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

*Philip R. Sellinger*

_____
PHILIP R. SELLINGER
United States Attorney

| CASE NUMBER: 24-CR- | United States District Court District of New Jersey | UNITED STATES OF AMERICA v. ANDREW BLUM | INFORMATION FOR 18 U.S.C. § 1832(a)(5) 18 U.S.C. § 1832(a)(3) | PHILIP R. SELLINGER UNITED STATES ATTORNEY FOR THE DISTRICT OF NEW JERSEY | BENJAMIN LEVIN ASSISTANT U.S. ATTORNEY NEWARK, NEW JERSEY (973) 645-2762 |
|---|---|---|---|---|---|